RECEIVED
IN ALEXANDRIA, LA

JUL 9 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFERY ZERINGUE,
                    Appellant

VERSUS

MICHAEL ASTRUE, U.S.
COMMISSIONER OF SOCIAL SECURITY,
                    Appellee

CIVIL ACTION
NO. 3:09-CV-00063

JUDGE JAMES T. TRIMBLE
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Jeffery Zeringue ("Zeringue") filed an application for disability insurance benefits ("DIB") on July 10, 2006 alleging a disability onset date of March 2, 2006 (Tr. p. 68) due to back problems, right foot drop, and high blood pressure (Tr. p. 89). That application was denied by the Social Security Administration ("SSA") (Tr. p. 41).

A de novo hearing was held before an administrative law judge ("ALJ") on October 31, 2007, at which Zeringue appeared with his attorney and a vocational expert (Tr. p. 15). The ALJ found that, although Zeringue has severe impairments of degenerative disc disease or the lumbar spine and right foot drop (Tr. p. 10), he has the residual functional capacity to perform sedentary work except as limited by his inability to operate foot controls, climb ladders, ropes or scaffolds, and work at heights or around dangerous machinery, as well as his need to change positions with

normal break periods.  The ALJ found that Zeringue can perform work which exists in substantial numbers in the national and regional economies, such as dispatcher, order clerk, and customer service representative, and concluded he was not under a disability as defined by the Social Security Act at any time through the date of the ALJ's decision on March 21, 2008 (Tr. pp. 8-14).

Zeringue requested a review of the ALJ's decision, but the Appeals Council (Tr. p. 1) declined to review it and the ALJ"s decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Zeringue next filed this appeal for judicial review of the Commissioner's final decision.  Zeringue sets forth the following issues for review on appeal:

> 1. The ALJ erred in failing to find obesity to be a severe impairment.
>
> 2. The ALJ erred in failing to consider obesity and the severe ambulatory deficits caused by Zeringue's lumbar radiculopathy and foot drop at the third step of the sequential evaluation, and the ALJ erred in failing to obtain the opinion of a medical expert.
>
> 3. The ALJ erred in the weight given to the opinion of a treating physician, Dr. W. Joseph Laughlin, who is a board certified orthopedic surgeon, and in failing to ask Dr Laughlin for a clarification of a statement made in one of Dr. Laughlin's letters.

### Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, a

plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. 423(d)(2).

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry

3

factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### Summary of Pertinent Facts

#### 1. Medical Records

At a January 2005 physical exam, Zeringue was 6'1" tall, weighed 309 pounds, denied any chest pain or palpitations, and was diagnosed with allergic rhinitis (Tr. p. 220). In March 2005, Zeringue weighed 305 pounds, did not have chest pain, palpitations, or shortness of breath, and was again diagnosed with allergic rhinitis (Tr. p. 219).

In December 2005, Zeringue was diagnosed with carpal tunnel syndrome in his right arm, as well as mild cervical degenerative disc disease (Tr. pp. 189-190). Zeringue underwent a carpal tunnel release to his right arm which gave him relief from symptoms and

4

numbness (Tr. p. 187).  Zeringue then started carpal tunnel glide exercises and was told to avoid flexion (Tr. p. 187).  Mild carpal tunnels symptoms were noted in Zeringue's left arm (Tr. p. 187).

Also in December 2005, Zeringue (46 years old) went to the emergency room with complaints of shortness of breath and chest pain (Tr. p. 218).  Zeringue's blood pressure was 127/87 and he weighed 305 pounds (Tr. pp. 218-219).  X-rays of Zeringue's chest showed his heart was clear and his lungs were normal (Tr. p. 221).  An abnormal ECG showed a left axis deviation and an incomplete right bundle branch block, with a normal sinus rhythm (Tr. p. 224).  Zeringue was diagnosed with chest pain and allergic rhinitis (Tr. pp. 218-220).

In March 2006, Zeringue was evaluated at the Baton Rouge Orthopedic Clinic by Dr. Eiserloh, an orthopedic surgeon, for right foot drop, low back pain, and leg numbness (Tr. p. 158).  Zeringue had a decreased range of motion in his lumbar spine, tender paraspinals, negative straight leg raises on the both sides, right foot drop, and normal neurology (Tr. pp. 158-159).  An MRI showed foraminal disc herniation a L5-S1 on the right with nerve root compression (Tr. p. 159).  Dr. Eiserloh diagnosed foot drop, herniated lumbar disc, and lumbar radiculopathy; since Zeringue had "very little, if any pain," he was prescribed physical therapy and released to work (Tr. p. 159).

The physical therapist had Zeringue undergo pelvic traction, ultrasound, galvanic stimulation to the right paraspinals, electrical stimulation to the anterior tibialis and an exercise

5

program, which resolved his pain completely but did not improve his right foot drop (Tr. p. 145). Dr. Eiserloh noted that Zeringue's foot drop had not improved and there were sensory changes in his foot (Tr. pp. 155-156).

An April 2006 MRI showed multilevel disc desiccation at L2-S1 inclusive with annular bulging, a shallow broad-based disc protrusion at L3-L4 without evidence of nerve root impingement, mild bilateral facet hypertrophy at L4-5, a right posterolateral shallow disc protrusion at L5-S21 without nerve root impingement, and changes of the left hemilaminectomy at L4-L5 and right hemilaminectomy at L5-S1, but not significant central canal stenosis at the L1-S1 levels inclusive (Tr. pp. 153-154). Dr. Eiserloh found Zeringue was unable to return to full active duty at his work due to difficulty climbing ladders and stairs (Tr. p. 143).

A functional capacity evaluation by a physical therapist in June 2006 showed Zeringue was unable to meet the full demands of a production technician (medium level work) at the chemical plant where he worked (Tr. p. 134). Zeringue was able to safely lift up to 35 pounds, but could not balance, work at unprotected heights, or climb ladders, and could only occasionally climb stairs, walk, crouch, or squat (Tr. p. 134). It was noted that use of a foot brace would improve Zeringue's ability to walk for long periods of time, function in an upright positions, and balance, and would perhaps enable him to climb ladders (Tr. p. 134).

In July 2006, Dr. W. Joseph Laughlin, an orthopedic surgeon

6

from the Baton Rouge Orthopedic Clinic, noted Zeringue's right foot drop, lumbar radiculopathy and popping right peroneal tendons, and recommended a foot drop brace (Tr. p. 150).

A residual functional capacity assessment was done for Zeringue in September 2006 by a non-examining physician, Dr. Charles Lee, on behalf of disability determinations services (Tr. pp. 166-173). After reviewing the medical records, Dr. Lee found Zeringue should never climb ladders, ropes of scaffolds, and can only occasionally climb ramps or stairs, can only occasionally balance, stoop, kneel, crouch, and crawl, and stated that Zeringue's residual functional capacity was sedentary work due to chronic low back pain and weakness in in his right lower extremity (Tr. pp. 168, 171).

In March 2007, Zeringue was examined by Dr. Laughlin for pain radiating from his left buttocks down his left leg (Tr. p. 183). Zeringue had negative straight leg raise tests and he did not have foot drop on the left, but he still had foot drop on the right and walked with the foot drop type antalgic gait (Tr. p. 183). Zeringue was diagnosed with a ruptured lumbar disc, foot drop on the right, and degenerative disc disease of the lumbar spine (Tr. p. 183). Zeringue was told not to do any repetitious stooping, squatting, bending or climbing and no improvement to the right foot was expected (Tr. p. 183).

In July 2007, Zeringue (then 49 years old) underwent a left carpal tunnel release with debridement of a previous nail wound (Tr. pp. 182, 203, 205). Afterward, Zeringue was noted to have

7

full range of motion, a normal neurovascular exam, and his numbness was mostly resolved (Tr. p. 182). By August 2007, Zeringue had a normal ulnar tunnel syndrome, normal sensation, and x-rays of the left wrist showed mild early arthritis (Tr. p. 181).

In September 2007, Dr. Laughlin evaluated Zeringue, noted his previous back surgery at the L4-5 and L5-S1 levels, chronic back problems, and chronic right foot drop, and stated it was unsafe for Zeringue to work in any type of job which required stooping, squatting, bending, or extended standing, and that the right foot drop interferes with his ability to walk on unlevel ground or function in unprotected heights (Tr. pp. 179-180). Dr. Laughlin also stated that Zeringue's right foot drop was not expected to improve, so he would not regain the ability to dorsiflex at the right ankle (Tr. p. 180).

In a December 2007 letter, Dr. Laughlin summarized Zeringue's limitations by stating he had difficulty climbing, stooping and squatting, is not able to repetitiously climb stairs or ladders, cannot work at unprotected heights or on uneven surfaces, cannot lift more than ten to fifteen pounds, cannot walk more than two hours in an eight hour day, must use a cane when he has back problems and fatigue in his right leg, and has difficulty walking in a normal manner despite using a foot drop brace (Tr. p. 238).

### 2. Administrative Hearing

At his October 2007 administrative hearing, Zeringue testified that he was 49 years old, had complete one year of college, and had some vocational training in drafting (Tr. p. 19). Zeringue

8

testified that he worked for Occidental Chemical as an operations technician, from November 1980 to March 2006 (Tr. pp. 19-20).

Zeringue testified that he had two prior low back surgeries and he returned to work after each one (Tr. pp. 20-21). Zeringue further testified that he has chronic drop foot, which means he has no stability in his right foot, very little downward pressure, no upward motion, and no side to side motion, so he has problems with stability, standing, and walking because he tends to trip over his right foot or his right ankle gives way on uneven ground (Tr. p. 21). Zeringue testified he also has trouble climbing stairs and he falls about once a month (Tr. p. 22). Zeringue testified that his orthopedic surgeons told him his drop foot is caused by nerve damage relating to his back problems (Tr. p. 22).

Zeringue testified that he takes hydrocodone for his back pain (prescribed by Dr. Laughlin) three to four days a week, two or three times a day; he only takes it when his back pain is more intense (Tr. p. 23). On bad days, pain shoots down Zeringue's leg and makes it difficult for him to concentrate on anything else (Tr. p. 23); he has to take pain pills and rest by laying down for about 75 percent of the day (Tr. p. 24). Zeringue testified that the hyrocodone sometimes makes him sleepy (Tr. p. 25). Zeringue also takes medication for high blood pressure (Tr. p. 27). Zeringue explained that he has nerve damage in his back which causes back pain that be corrected by surgery; he does not have any significant herniations in his back (Tr. p. 29).

Zeringue testified that he can sit for up to 30 minutes at a

time, then has to get up for five to ten minutes before he can sit down again, he can only stand for 30 minutes at a time due to back pain, and he can walk a full block, or about ten minutes, without stopping (Tr. pp. 24-25).

Zeringue testified that he has arthritis in his neck which limits the range of motion in his neck, so he has trouble looking down (Tr. p. 26). Zeringue testified he can sit and look down for 20 to 30 minutes before his neck starts hurting moderately and he has to pick his head up and take a five minute break (Tr. p. 26). Zeringue testified that, if he worked sitting for about six hours in an eight hour day, forty hours per week, he would miss about one day a week due to back pain (Tr. p. 28). Zeringue testified that it would be very difficult for him to work four eight-hour days a week (Tr. p. 30). Zeringue also testified that his right hand is getting numb again, which affects his ability to use his hand (Tr. p. 28).

The ALJ posed a hypothetical question to the VE,[1] involving a person of Zeringue's age, education, and work experience, who cannot use foot controls, can lift/carry up to twenty pounds occasionally and ten pounds frequently, cannot balance, cannot climb ladders, ropes, or scaffolds, cannot work at unprotected heights or around dangerous, moving machinery, can stand and walk four to six hours in an eight hour day, can walk up to two hours in

---

[1] The vocational expert's name is misspelled in the transcript as Thomas G. Mangal (Tr. p. 15). His name is Thomas G. Mungall (Tr. p. 65)and he is a Louisiana licensed vocational rehabilitation counselor, http://www.lrcboard.org/.

an eight hour day, and can sit six hours in an eight hour day with normal breaks (Tr. p. 32). The VE testified that, since the past relevant work was medium level and involved climbing, unprotected heights, and moving machinery, the person could no longer do that work (Tr. pp. 32-33). The VE further testified that such a person could do sedentary work which allows alternating sitting and standing, such as dispatching (SOC 43-5032,[2] SVP 3-5, 172,550 jobs nationally and 4080 jobs in Louisiana), order clerk (SOC 43-4151, 259,760 jobs nationally and 2200 jobs in Louisiana), and customer service representative (SOC 43-4051, SVP 3-5, 2,067,700 jobs nationally and 24,370 in Louisiana) (Tr. pp. 34-36). The VE testified that, during the initial six month probationary period at one of these jobs, few absences are tolerated, but after that period an employee could miss about one day per month (Tr. p. 36).

The ALJ posed an second hypothetical involving the same person with the same restrictions, plus the additional limitation that the person would need to take additional breaks (Tr. pp. 36-37). The VE testified that such a person not be able to keep the job because he was not able to work a full eight-hour day (Tr. p. 37).

Zeringue's attorney posed a third hypothetical question to the VE, involving a person who can lift twenty pounds occasionally, ten pounds frequently, sit for thirty minutes at a time then take a

---

[2] Although he never explained what "SOC" stands for, the VE may be referring to the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, a companion publication to the *Dictionary of Occupational Titles*. The numbers cited by the VE, as they appear in the administrative transcript, do not appear to be correct, although it is unclear whether the fault lies with the VE or the transcriptionist.

standing break for ten minutes, can look down to twenty minutes then has to straighten up his neck for about ten minutes, can stand/walk a total of two hours in an eight hour day, and can sit a total of six hours in an eight hour day (Tr. pp. 37-38). The VE testified that there probably are not any jobs such a person could do, since he has to have a break for ten minutes of every thirty (Tr. p. 38). The VE also confirmed that missing work three days a month would not normally be acceptable in any job (Tr. p. 38).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Zeringue (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this

12

means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Zeringue has not engaged in substantial gainful activity since March 2, 2006, and that he has severe impairments of degenerative disc disease of the lumbar spine and right foot drop (Tr. p. 10), but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 11). The ALJ also found that Zeringue is unable to perform his past relevant work as a production technician (Tr. p. 13).

At Step No. 5 of the sequential process, the ALJ further found that Zeringue has the residual functional capacity to perform the sedentary work except as reduced by his inability to operate foot controls, climb ladders, ropes, or scaffolds, or work at heights or around dangerous machinery, and his need to change positions with normal break periods (Tr. p. 11). The ALJ found that the claimant is a younger individual with at least a high school education, and that the transferability of work skills is immaterial to the disability determination (Tr. p. 13). The ALJ concluded that there are a significant number of jobs in the national economy which Zeringue can perform, such as dispatcher, order clerk, and customer service representative (Tr. pp. 13-14) and, therefore, Zeringue was not under a "disability" as defined in the Social Security Act at

13

any time through the date of the ALJ's decision on March 21, 2008 (Tr. p. 14).

## Law and Analysis

### Issue No. 1 - Obesity

First, Zeringue contends the ALJ erred in failing to find his obesity is a severe impairment. Zeringue is 6'1" tall and weighed 280 pounds on March 22, 2007 (Tr. p. 185). As he points out in his brief, his medical records show that he has lost weight since January 2005, when he weighted 309 pounds.

In Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit construed 20 C.F.R. § 404.1520(c) to mean that an impairment can be considered as not "severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not affect his ability to work, and construed that to mean that some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors.

There is no medical or other evidence in this case to indicate that Zeringue's obesity had any effect on his ability to work. Zeringue did not stop working at his medium level job with Occidental Chemical until March 2006, so apparently his obesity did not impair his ability to work before then. Obesity was never mentioned by Zeringue or his attorney as an impairment before or during his administrative hearing, and Zeringue's attorney did not take the opportunity at his hearing to ask Zeringue about any effects his obesity has on his ability to work. Moreover,

14

Zeringue's residual functional capacity was evaluated by his own physicians, who would have considered all physical limitations affecting his ability to work, yet they never mentioned his obesity.   Zeringue's obesity is not addressed in his medical records as a diagnosis or a functional limitation (Tr. p. 4).

The ALJ did not discuss Zeringue's obesity in his ruling because there was never an issue as to Zeringue's obesity constituting an impairment.   The mere fact that he is obese does not necessarily mean his ability to work is affected by his obesity.   The ALJ's lack of discussion of Zeringue's obesity constitutes an implicit finding that his obesity is not a severe impairment, and substantial evidence supports that conclusion.   See Hammond v. Barnhart, 124 Fed.Appx. 847 (5th Cir. 2005)(the Fifth Circuit has found that the ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it).   In this case, Zeringue's other impairments, by themselves, limit him to doing sedentary work.   There is no evidence that Zeringue's obesity has any impact on his ability to do sedentary work.

Zeringue's burden was to prove that he was disabled within the meaning of the Social Security Act.   That requirement means that he must show a "medically determinable" impairment and that he is unable "to engage in substantial gainful activity".   Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994), cert. den., 514 U.S. 1120, 115 S.Ct. 1984 (1995); 20 C.F.R. §423(d)(1)(A) and (d)(3); 20 C.F.R. §404.1508; 42 U.S.C. §423(d)(1)(A).   Since there is no

15

evidence in the record to indicate Zeringue's obesity has an effect on his ability to work, Zeringue did not carry his burden of proving his obesity was a severe impairment. This issue is meritless.

Issue No. 2 - Combination of Impairments

Next, Zeringue contends the ALJ erred in failing to consider his obesity in combination with the severe ambulatory deficits caused by his lumbar radiculopathy and right foot drop at the third step of the sequential evaluation, and the ALJ erred in failing to obtain the opinion of a medical expert.

To the extent Zeringue appears to argue that the ALJ failed to considered the Listings and skipped Step 3 of the sequential evaluation, that argument is incorrect. The ALJ specifically considered Listing 1.04 and found Zeringue did not meet or equal that or any other listing (Tr. p. 11).

Zeringue claims the ALJ failed to consider his obesity when determining whether he met a listing. Obesity, although itself not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments. Beck v. Barnhart, 205 Fed.Appx. 207, 211 (5th Cir. 2006), citing SSR 02-1p. Obesity should be considered in combination with other impairments in making the residual functional capacity determination and in discussing the claimant's ability to perform sustained work activities. Beck, 205 Fed.Appx. at 212, citing SSR 02-1p. For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a

16

listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885 (1990); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990) (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Sullivan, 493 U.S. at 531.

In the case at bar, the ALJ did not specifically consider Zeringue's obesity. As stated above, Zeringue's obesity is not diagnosed in his medical records and was not raised at his administrative hearing. There is no medical evidence that shows his obesity aggravates Zeringue's degenerative disc disease of the lumbar spine and right foot drop, or that it has any effect on his ability to perform sedentary work. More importantly, the evaluations of Zeringue's physical limitations by his treating physicians, Dr. Laughlin and Dr. Eiserloh, show that Zeringue does not meet one of the listings under Listing 1.00, Musculoskeletal System. Of particular note is their finding that Zeringue can walk up to two hours in an eight hour day, a finding that was adopted by

17

the ALJ.   That finding indicates that Zeringue's obesity does not inhibit is ability to ambulate to the point that he meets the listing-level severity of Listing 1.02, Major dysfunction of a joint for any cause.[3]

Substantial evidence supports the ALJ's conclusion that since Zeringue clearly does not meet or equal a listing, the ALJ did not err in failing to find Zeringue's obesity in conjunction with his severe impairments meets a listing.

Finally, Zeringue contends the ALJ erred in failing to appoint a consultative expert to determine whether his obesity in combination with his other impairments meets or equals a listing. However, since Zeringue's treating physicians found he has the residual functional capacity to stand/walk up to two hours in an eight hour day, albeit occasionally with the use of a cane, Zeringue clearly does not meet Listing 1.04.   There was no need to employ the services of a consultative medical expert to make that determination.

Accordingly, the ALJ did not err in failing to consider Zeringue's obesity in conjunction with his other impairments[4] when considering the listings or in failing to appoint a consultative

---

[3] The "inability to ambulate effectively" is defined and explained in Listing 1.00(B)(2)(b).   Given Zeringue's residual functional capacity as explained by his own physicians, Zeringue's right ankle impairment, even with his obesity, does not meet those requirements.

[4] In any event, to whatever extent the ALJ's failure to consider his obesity in combination with his other impairments may be considered an error under the Social Security regulations, it is a harmless one.

expert.   This issue is meritless.

Issue No. 3 - Treating Doctor's Opinion

Zeringue also argues the ALJ erred in the weight given to the opinion of a treating physician, Dr. W. Joseph Laughlin, who is a board certified orthopedic surgeon, and in failing to ask Dr Laughlin for a clarification of a statement made in Dr. Laughlin's letters dated December 3, 2007, which summarized Zeringue's functional limitations and capacity.  Specifically, Zeringue points to Dr. Laughlin's statement that he is "disabled."

In September 2007, Dr. Laughlin stated it is unsafe for Zeringue to work in any type of job which required stooping, squatting, bending, or extended standing, and that the right foot drop interferes with his ability to walk on unlevel ground or function at unprotected heights.  He concluded, "Dr. Eiserloh and I have both determined that the patient is disabled based on the chronic back problems with two previous back surgeries and the chronic right foot drop."  (Tr. p. 180).  In December 2007, Dr. Laughlin stated Zeringue has difficulty climbing, stooping, and squatting, is not able to repetitiously climb stairs or ladders, cannot work at unprotected heights or on uneven surfaces, cannot lift more than ten to fifteen pounds, cannot walk more than two hours in an eight hour day, must use a cane when he has back problems and fatigue in his right leg, and has difficulty walking in a normal manner despite using a foot drop brace.  Dr. Laughlin concluded, "I do not think that the patient is capable of performing a job on a regular sustained basis since he would not be

safe." (Tr. p. 238).

The ALJ is required to give substantial weight to the doctors' medical findings, not to their opinions about the actual availability of jobs for a person. Loya v. Heckler, 707 F.2d 211, 214 (5th Cir. 1983). Thus, an ALJ can properly discount a medical assessment stating that a claimant is completely disabled.

The ALJ found Zeringue can perform sedentary work except for work involving foot controls, climbing ladders, ropes or scaffolds, and working at heights or around dangerous machinery, and he must be able to make positional changes with normal break periods. The ALJ made it clear in his hypothetical questions, findings, and conclusions that he accepted Dr. Laughlin's and Dr. Eiserloh's findings that Zeringue cannot climb, stoop, squat, work at heights or uneven surfaces, lift more than ten to fifteen pounds, or walk more than two hours a day. Therefore, although the ALJ rejected Dr. Laughlin's conclusory statements that Zeringue cannot work, he accepted Dr. Laughlin's medical findings as to Zeringue's functional limitations.

Zeringue's contentions, that the ALJ rejected Dr. Laughlin's December 3, 2007 letter in its entirety and failed to consider Dr. Laughlin's September 11, 2007 report, are erroneous. The ALJ referenced both the report and the letter in his opinion, and relied on the medical findings of both Dr. Laughlin and Dr. Eiserloh to determine Zeringue's limitations and residual functional capacity.

Since the ALJ does not have to accept a physician's statements

20

as to disability, the ALJ did not err in rejecting Dr. Laughlin's statements that Zeringue is disabled. Since the ALJ accepted the functional limitations imposed by Dr. Laughlin and Dr. Eiserloh on Zeringue, substantial evidence (from Zeringue's treating physicians) supports the ALJ's conclusion that Zeringue can perform a limited range of sedentary work.

This issue is also meritless.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Zeringue's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of June, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE